# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RICHARD CHARLES HANNA,<br><br>Plaintiff,<br><br>v.<br><br>COUNTY OF MARIPOSA, et al.,<br><br>Defendants. | Case No. 1:12-cv-01885-AWI-SAB<br><br>FINDINGS AND RECOMMENDATIONS RECOMMENDING DENYING PLAINTIFF'S MOTION TO SET ASIDE JUDGMENT<br><br>(ECF No. 29)<br><br>OBJECTIONS DUE WITHIN THIRTY DAYS |

## I.

## PROCEDURAL HISTORY

On August 20, 2012, Plaintiff Richard Charles Hanna, represented by counsel, filed this action in Mariposa County Superior Court alleging excessive force and state law claims against the County of Mariposa and unnamed Defendants. Defendant County of Mariposa removed the action to the Eastern District of California on November 11, 2012, and filed a motion to dismiss on November 21, 2012. On February 20, 2013, Plaintiff filed a notice of voluntary dismissal with prejudice. On February 22, 2013, this action was dismissed with prejudice.

On November 12, 2013, District Judge Anthony W. Ishii issued an order relating this action to Hanna v. Mariposa County Sheriff Dept., No. 1:12-cv-00501-AWI-SAB (E.D. Cal.), and the action was referred to the undersigned to determine if the dismissal of this action with prejudice should be set aside. The Court ordered Plaintiff's counsel to respond to Plaintiff's

1

filings indicating that he did not agree to dismiss this action. Following responses by the parties, the Court set an evidentiary hearing for March 13, 2014. On January 23, 2014, Plaintiff filed a motion to set aside the judgment in this action. On March 12, 2014, Defendant filed a request for judicial notice.[1]

An evidentiary hearing was held on March 13, 2014. Plaintiff appeared at the hearing pro se and Counsel Oliver W. Wanger, Jena Mary Graykowski, and Micaela Leigh Neal appeared for Defendant. The Court has considered the evidence presented during the hearing, Plaintiff's motion to strike, and the record in this action and issues the following findings and recommendations.

## II.

## LEGAL STANDARD

Pursuant to Rule 60(b) of the Federal Rules of Civil Procedure, "[o]n motion and just terms, the court may relieve a party . . . from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence . . . (3) fraud . . .; (4) the judgment is void; (5) the judgment has been satisfied, released or discharged; . . . or (6) any other reason that justifies relief." Fed. R. Civ. Proc. 60(b). Where none of these factors is present the motion is properly denied. Fuller v. M.G. Jewelry, 950 F.2d 1437, 1442 (9th Cir. 1991).

Federal Rule of Civil Procedure 60(b)(6) allows the Court to relieve a party from an order for any reason that justifies relief. Rule 60(b)(6) "is to be used sparingly as an equitable remedy to prevent manifest injustice and is to be utilized only where extraordinary circumstances . . ." exist. Harvest v. Castro, 531 F.3d 737, 749 (9th Cir. 2008) (internal quotations marks and citation omitted). The moving party "must demonstrate both injury and circumstances beyond his control . . . ." Id. (internal quotation marks and citation omitted).

---

[1] Defendant requests that the Court take judicial notice of court records. The court "may take notice of proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to matters at issue.' " Bias v. Moynihan, 508 F.3d 1212, 1225 (9th Cir. 2007) (quoting Bennett v. Medtronic, Inc., 285 F.3d 801, 803 n. 2 (9th Cir.2002) (alterations in original) (quoting United States ex rel. Robinson Rancheria Citizens Council v. Borneo, 971 F.2d 244, 248 (9th Cir.1992)). The Court grants Defendant's request for judicial notice.

"Relief under Rule 60(b)(1) is not generally appropriate where a party is careless, or takes deliberate action with negative or unfortunate consequences." Noland v. Flohr Metal Fabricators, Inc., 104 F.R.D. 83, 87 (D. Alaska 1984). Under Rule 60(b) judgment based on a settlement agree may be set aside only under extraordinary circumstances where one of the parties has repudiated the agreement. Keeling v. Sheet Metal Workers Int. Assoc., 937 F.2d 408, 410 (9th Cir. 1991).

## III.

## FINDINGS OF FACT

On December 8, 2011, Plaintiff, Richard Charles Hanna, appearing pro se and in forma pauperis, filed an action, Hanna v. Mariposa County Sheriff Dept. ("Hanna 1"), No. 10082, in Mariposa County Superior Court regarding an incident that occurred while he was detained in the Mariposa County Jail on April 8, 2011. (ECF No. 34-2 at 26.) Plaintiff requested his criminal defense attorney, Eugene Action, take over Hanna 1 for him since he was being transferred to prison.

Due to Plaintiff being in prison, the parties agreed that Mr. Action and Plaintiff would communicate regarding the case through Renee Ritter. Plaintiff and Ms. Ritter had lived together for a number of years and had a child together. During this time period, Ms. Ritter also had a power of attorney to act on behalf of Plaintiff. Ms. Ritter was employed as a jail officer at the Mariposa County Jail and was told by her supervisor not to become involved in Plaintiff's case.

On April 2, 2012, appearing pro se and in forma pauperis, Plaintiff filed a civil rights action pursuant to 42 U.S.C. § 1983 in the Eastern District of California, Hanna v. Mariposa County Sheriff Dept. ("Hanna 2"), No. 1:12-cv-00501-AWI-SAB, based upon the same facts as Hanna 1.

Plaintiff had filed Hanna 1 and the State Court intended to dismiss the case with prejudice. (Response by Attorney Eugene Action to Order 3, ECF No. 20; Testimony of Mr. Action.) On May 30, 2012, Mr. Action appeared for a hearing in the Superior Court and, at Mr. Action's request, Hanna 1 was dismissed without prejudice. (ECF No. 34-2 at 18.) On August 20, 2012, Mr. Action re-filed the case, Hanna v. County of Mariposa ("Hanna 3"), No. 10223, in Mariposa

1  County Superior Court.  (ECF No. 34-1 at 46.)

2  On November 15, 2012, Defendant removed Hanna 3 to the Eastern District of California, No. 1:12-cv-01885-AWI-SAB.  (ECF No 34-1 at 22.)  On November 16, 2012, at Plaintiff's request, Ms. Ritter e-mailed Mr. Action requesting information on the state law complaint.  (Exhibit BB.)  On January 13, 2013, Plaintiff had Ms. Ritter e-mail Mr. Action to ask what was happening in the state law action. (Exhibit AA.)

After reviewing the motion to dismiss and having discussions with defense counsel, Mr. Action contacted Ms. Ritter regarding dismissing Hanna 3.  Ms. Ritter informed Mr. Action that he needed to speak directly with Plaintiff.  (Exhibit W.1).  On February 14, 2013, Mr. Action spoke with Plaintiff regarding dismissing Hanna 3.  (Exhibit I.)  The parties entered into an agreement to dismiss the action for a waiver of costs with the dismissal to count as a strike under the Antiterrorism and Effective Death Penalty Act and the Prison Litigation Reform Act with each side to bear their own attorney fees.  Defense counsel prepared the notice of voluntary dismissal. (Exhibit J.)  On February 20, 2013, Plaintiff filed a notice of voluntary dismissal with prejudice in Hanna 3.  (ECF No. 34-3 at 6.)  Hanna 3 was dismissed with prejudice on February 22, 2013.  (Exhibit M.)

## IV.

## DISCUSSION

Plaintiff claims that he was not aware that this case would be dismissed or that it would be dismissed with prejudice.  The Court finds that Plaintiff is not credible.  In making this determination, the Court considers Plaintiff's previous conviction for felony perjury.

Plaintiff claims that after he asked Mr. Action to take over Hanna 1, he had no communication from Mr. Action regarding the case.  However, the evidence contradicts this.  Mr. Action testified that he informed Ms. Ritter about the case and she kept Plaintiff informed.  While Ms. Ritter would not commit to receiving any communication from Mr. Ritter regarding the action, it is clear that she did and that she was acting as a conduit of information between Plaintiff and Mr. Action.

Mr. Action filed Hanna 2 on August 20, 2012.  On November 16, 2012, Ms. Ritter e-

mailed Mr. Action requesting information. The e-mail stated:

> Rich[2] has a few questions for you – 1. What are [sic] asking in Personal Damages? 2. Punitive Damages? 3. Have you viewed the video? Do you have Discovery? Have you filed a Demand of Documents? 4. Date set for Case Management Conference? If done what happened? 5. Did you file against Taser Co? 6. What is happening with the Merced Case? I guess it has something to do with a Federal Case? That's all for now [sic] Renee

(Exhibit BB.) Ms. Ritter initially said that she did not remember how she obtained the information that was requested in the e-mail, but then testified that the questions were contained in a letter she received from Plaintiff, which she subsequently destroyed.

Plaintiff argues that this e-mail could have been referring to the intial complaint that he filed in Hanna 1 or Hanna 2, but this is not a plausible explanation. Initially, at the hearing, Plaintiff testified that he thought Hanna 1 was "dead in the water" when he went to state prison. Plaintiff stated that because he was unable to communicate with Mr. Action, he thought that Hanna 1 was "null and void." Plaintiff said he did not know until almost a year later that there was another case involved. Throughout these proceedings, Plaintiff has claimed that he had no knowledge of Hanna 3 being filed prior to the phone call on February 14, 2013 from Mr. Action, however, the Court finds this is not credible.

It also is evident that the information sought could not be referring to the complaint that Plaintiff filed in Hanna 2. Plaintiff drafted the complaint in Hanna 2. Plaintiff would have no reason to ask Mr. Action, who had no involvement in Hanna 2, the damages that were sought or who the suit had been brought against.

Reviewing the information sought in the query, the damages that were sought and whether the Taser company was included as a defendant, can lead to no other conclusion but that Plaintiff was asking what Mr. Action had put in the complaint that he filed in Hanna 3. It is clear that Plaintiff is referring to Hanna 3 in the e-mail. Additionally, on January 13, 2013, Plaintiff had Ms. Ritter send an e-mail to Mr. Action asking "Richard wants to know what is happening?? He wants to make sure the Mariposa Case is still going????" (Exhibit AA.) While Plaintiff claims that he did not have any communication with Mr. Action or any information that Mr. Action had

---

[2] At trial Ms. Ritter testified that she calls Plaintiff Rich.

5

1 filed a complaint until their discussion regarding settlement on February 14, 2013, it is evident
2 that he was aware of Hanna 3 shortly after it was filed and prior to November 16, 2012.

3       Plaintiff concedes that Mr. Action spoke with him about dismissing the case and states
4 that he told Mr. Action to do whatever he wanted with the case. Plaintiff argues that because he
5 did not know about the state court case the dismissal should not be held against him. However, as
6 discussed prior, the Court finds that Plaintiff had knowledge that Mr. Action had filed Hanna 3
7 and there is no merit to this argument.

8       Plaintiff also contends that he is entitled to set aside the judgment because he did not
9 know about the dismissal, did not agree to dismiss the action, or understand what with prejudice
10 meant. After receiving a message from Ms. Ritter, Plaintiff called Mr. Action on February 14,
11 2013, and they had a phone conversation regarding Hanna 3. Mr. Action spoke with Plaintiff
12 about dismissing the action. At the hearing, Plaintiff stated that Mr. Action told him the County
13 was immune and they discussed dismissal. Plaintiff claimed that he thought they were talking
14 about Hanna 3 and he "pretty much wrote it off as nonsense." Plaintiff contends that since he was
15 pursing that action pro se he thought Mr. Action could not dismiss it.

16       Mr. Action testified that he and Plaintiff discussed the problems with Hanna 3. Mr.
17 Action explained that it looked like the County was gone from the action. They discussed Ms.
18 Ritter's income, the inability of the individual correctional officers to pay damages, and the
19 financial risk of proceeding with the case. Mr. Action does not specifically remember if he
20 informed Plaintiff about what dismissal with prejudice means, but he did inform Plaintiff that
21 there would be collateral consequences, such as not being able to refile the action because of the
22 statute of limitations.

23       During the hearing, Plaintiff testified that "he pretty much didn't pay [Mr. Action's]
24 comments any attention." While neither Mr. Action nor Plaintiff would come out and state that
25 Plaintiff agreed to dismiss the case, it is clear that he did. Mr. Action testified that he laid out the
26 information for Plaintiff, provided him with his options, and did not recommend a course of
27 action. The voluntary dismissal was a result of Plaintiff's decision to settle to avoid the costs
28 associated with the action.

1     Finally, Plaintiff contends that Mr. Action knew that he had filed a federal complaint
2 because he sent a copy of the complaint in Hanna 2 to Mr. Action. Mr. Action testified that he
3 had no knowledge that Plaintiff had filed a separate action and did not receive any legal
4 documents regarding the case from Plaintiff. When questioned, Plaintiff stated that he did not
5 send the documents directly to Mr. Action, but would have included them with his mail to Ms.
6 Ritter to save money on postage.

7     Ms. Ritter testified that she placed all mail sent to her from Plaintiff in a box to be held for
8 him until he was released from prison without looking at it. To the extent that Plaintiff may have
9 attempted to send information on his federal case to Mr. Action, the Court finds that Mr. Action
10 did not receive it and was unaware of Hanna 2 until after Judge Ishii issued the order relating
11 these two cases as Mr. Action testified during the hearing. Further, based on the testimony at the
12 hearing, Plaintiff did not inform Mr. Action during their phone conversation that there was a
13 federal case pending based upon the same facts when they discussed settling Hanna 3 for a waiver
14 of costs.

15     If an action is originally filed in Federal Court under federal question jurisdiction, federal
16 common law controls an attorney's actions concerning stipulations and settlement. Hamilton v.
17 Willms, No. 1:02-cv-06583-AWI-SMS, 2007 WL 2558615, at *7 (E.D. Cal. Sept 4, 2007). A
18 principal causes his agent to have apparent authority by conduct which, reasonably interpreted,
19 causes third persons to believe that the principal consents to have this act done on her behalf by
20 the agent. First Fidelity Bank, N.A. v. Government of Antigua & Barbuda-Permanent Mission,
21 877 F.2d 189, 193 (2nd Cir.1989). The creation of an agency relationship under an "apparent
22 authority theory has long been settled in the federal system." American Soc'y of Mechanical
23 Eng'rs, Inc. v. Hydrolevel Corp., 456 U.S. 556, 567, 102 S.Ct. 1935, 72 L.Ed.2d 330 (1982).
24 "Apparent authority is the power to affect the legal relations of another person by transactions
25 with third persons, professedly as agent for the other, arising from and in accordance with the
26 other's manifestations to such third persons." American Soc'y of Mechanical Eng'rs, Inc., 456
27 U.S. at 566 n.5 (quoting Restatement (Second) of Agency § 8 (1957)).

28     The issue before the Court on this motion is whether Plaintiff has shown any of the factors

7

1  under Rule 60(b) to have the voluntarily dismissal and judgment set aside.  The Court finds that
2  Mr. Action was given permission by Plaintiff to represent him in the state court action.  Mr.
3  Action conferred with Plaintiff who gave his permission to enter into a settlement agreement to
4  dismiss this action for costs.  Mr. Action accepted Defendant's offer and the case was dismissed.

5  While Plaintiff attempts to claim ignorance of the circumstances, Plaintiff was the only
6  individual in this action who was aware that three actions had been filed based upon the same
7  incident.  When Plaintiff spoke with Mr. Action about voluntarily dismissing Hanna 3, he was
8  fully aware that Hanna 2 was still active.  Mr. Action informed Plaintiff that there would be
9  collateral consequences to the dismissal, yet Plaintiff did not inquire about the effect on Hanna 2.
10 Relief under Rule 60(b)(1) is not generally appropriate where a party is careless, or takes
11 deliberate action with negative or unfortunate consequences."  Noland, 104 F.R.D. at 87.  Nor has
12 Plaintiff, as the moving party, demonstrated circumstances beyond his control to gain relief under
13 Rule 60(b)(6).  The Court recommends that Plaintiff's motion to set aside the judgment in this
14 action be denied.

## V.

## CONCLUSION AND RECOMMENDATION

17  Based on the foregoing, IT IS HEREBY RECOMMENDED that Plaintiff's motion to set
18 aside the judgment in this action be DENIED.

19  These findings and recommendations are submitted to the district judge assigned to this
20 action, pursuant to 28 U.S.C. § 636(b)(1)(B) and this Court's Local Rule 304.  Within fourteen
21 (14) days of service of this recommendation, any party may file written objections to these
22 findings and recommendations with the Court and serve a copy on all parties.  Such a document
23 should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  The
24 district judge will review the magistrate judge's findings and recommendations pursuant to 28
25 ///
26 ///
27 ///
28 ///

U.S.C. § 636(b)(1)(C). The parties are advised that failure to file objections within the specified time may waive the right to appeal the district judge's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated:  **March 17, 2014**

UNITED STATES MAGISTRATE JUDGE